IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TRENA DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | 14-4039-CV-C-REL-SSA |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

Plaintiff Trena Davis seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act ("the Act"). Plaintiff argues that the Appeals Council erred in failing to consider new and material evidence, and that the ALJ erred in failing to fully develop the record by not obtaining the missing medical records related to plaintiff's worker's compensation case and not attempting to obtain further details from plaintiff's treating physician Dr. Wen. I find that the ALJ erred in failing to develop the record. Therefore, plaintiff's request to remand this case for further consideration will be granted.

*I.*     ***BACKGROUND***

On August 9, 2011, plaintiff applied for disability benefits alleging that she had been disabled since November 17, 2009. Plaintiff's disability stems from chronic pain in both hips, pain in her legs, and depression. Plaintiff's application was denied on September 13, 2011. On September 4, 2012, a hearing was held before an Administrative Law Judge. On September 10, 2012, the ALJ found that plaintiff was not under a "disability" as defined in the Act. On January 3, 2014, the Appeals Council

denied plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

On September 10, 2014, plaintiff filed a motion to amend/correct the administrative transcript by requiring a "complete transcript," requesting that a Medical Source Statement dated February 28, 2013, prepared by Dr. Dennis Wen and clinic notes from Green Meadows Family Medicine dated January 29, 2013, and February 17, 2013, be included in the administrative transcript before the court. On October 15, 2014, that motion was denied as moot after defendant filed a supplemental transcript which included the Medical Source Statement by Dr. Wen and records from Green Meadows Family Medicine dated January 29, 2013. The evidence established that the medical records dated February 28, 2013, were not presented to the Appeals Council as stated in plaintiff's motion. Although this additional evidence was made a part of the administrative record before me, the parties were directed to provide legal authority for their use in this appeal.

## II.    STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial

evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

### III.    *BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS*

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of

3

substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

    Yes = disabled.
    No = not disabled.

4

Case 2:14-cv-04039-REL   Document 29   Filed 07/09/15   Page 4 of 14

## IV. THE RECORD

The record contains the following evidence.

## A. ADMINISTRATIVE REPORTS

The record contains the following administrative reports:

**Earnings Record**

The record shows that plaintiff earned the following income from 1988 through 2012:

| Year | Earnings | Year | Earnings |
| --- | --- | --- | --- |
| 1988 | $ 201.21 | 2001 | $ 4,420.45 |
| 1989 | 0.00 | 2002 | 7,151.14 |
| 1990 | 0.00 | 2003 | 4,067.11 |
| 1991 | 162.28 | 2004 | 2,703.93 |
| 1992 | 0.00 | 2005 | 1,616.08 |
| 1993 | 0.00 | 2006 | 2,655.28 |
| 1994 | 1,867.52 | 2007 | 2,462.72 |
| 1995 | 2,023.60 | 2008 | 7,081.65 |
| 1996 | 4,615.22 | 2009 | 2,504.74 |
| 1997 | 981.71 | 2010 | 0.00 |
| 1998 | 6,329.98 | 2011 | 0.00 |
| 1999 | 6,155.83 | 2012 | 0.00 |
| 2000 | 1,775.79 | | |

(Tr. at 108-109).

**B.    SUMMARY OF TESTIMONY**

The administrative hearing was held on September 4, 2012.  At the commencement of the hearing, the following colloquy took place:

> ALJ:  Ms. Davis, it's my understanding you're not represented by an attorney or a representative, right?
>
> CLMT:  No, I'm not represented by nobody.
>
> ALJ:  Okay.  Do you wish to have an opportunity to go hire one to represent you in this matter?
>
> CLMT:  If I hire one how long is the turnaround on it?
>
> ALJ:  You know I have no idea. We've had some attorneys that ask for an additional year to get the medical records. And then we have some that show up on the day of hearing ready, you know.
>
> CLMT:  No, I'd rather represent myself first, and then if I need one I'll get one later.

(Tr. at 26).

When the ALJ asked plaintiff if she had any objection to the medical evidence in the file, plaintiff said:

> CLMT:  The only thing I had is it looked like it didn't show anything for Barnes Jewish Hospital.  But I went there because I went there on a Workmen's Comp -- or one of the lawyers in Columbia sent me there on a Workmen's Comp injury.  And they rated my back.  And they rated my back to 70 percent disabled on my back.  So I don't know why they're not showing, you know, why they're not -- they don't have any papers showing, you know, that. . . .  They should have papers just like the hospital does.  Because one of the lawyers sent me up there to see Dr. Levy; and Dr. Levy is with Barnes Jewish Hospital in St. Louis.
>
> ALJ:  Here it says they don't have any records of your treatment at Barnes Jewish Hospital, it's Exhibit 1F.  They said Barnes Homecare.
>
> CLMT:  No, I didn't go to Barnes Homecare.  It was Barnes Jewish Hospital. They sent us there, and I went there to see Dr. Levy. . . .

> ALJ: How long ago was that?
>
> CLMT: A couple years back I went up there. . . . But I know they told me I was 70 percent disabled in my back. And I don't know if it would be in my Workmen's Comp injury stuff or not. I don't have any of that.
>
> ALJ: Well, I think that that would be pretty pertinent medical records. . . . I don't think you want me to consider your case without those records.
>
> CLMT: I went -- she told me to get some more, and I went and got some more from the hospital earlier too, so. . . .
>
> ALJ: Let the record reflect the claimant just submitted nine pages from Family Medicine, clinic note; one consisting of three pages, October 14th of 2011; one consisting of three pages from January 18, 2012; and three pages consisting of dates February 29th of 2012. . . .

(Tr. at 30-32).

At the time of the hearing, plaintiff was 42 years of age and is currently 45 (Tr. at 28). She is 5' 3" tall and weighs 270 pounds (Tr. at 32). Plaintiff's alleged onset date is November 17, 2009 -- she got fired for being unable to perform her duties because of her pain (Tr. at 28-29).

Plaintiff has been married since 1995 (Tr. at 32). Her husband works at the university (Tr. at 33). No one in her family receives disability benefits and plaintiff is not covered by Medicaid (Tr. at 33). She does not receive food stamps (Tr. at 33).

Plaintiff filed a worker's compensation claim in 2008 or 2009 for a leg injury after she fell down some steps (Tr. at 34). She did not receive any type of settlement (Tr. at 34). Plaintiff received unemployment after she lost her job but she has been told she needs to pay it back (Tr. at 34). "The lady tried to lie, instead of actually telling them the truth that she fired me for my, you know, disabilities, she told them that I had wrote a

7

Case 2:14-cv-04039-REL   Document 29   Filed 07/09/15   Page 7 of 14

note saying that I needed to leave to take care of my dad, which was a lie because my dad has been deceased ever since 2006." (Tr. at 34). That issue is still in limbo (Tr. at 34).

Plaintiff does not smoke or drink (Tr. at 35). She completed 8th grade, was in special education classes, and did not earn a GED (Tr. at 35, 134). She has no specialized job training and did not attend trade or vocational school (Tr. at 134). Plaintiff's last job was at a nursing home working part time doing laundry and some nursing (Tr. at 36). She worked about 15 hours per week (Tr. at 36). Plaintiff was let go after two or three months (Tr. at 36). Before that plaintiff worked part-time as a housekeeper for an alumni center at the university (Tr. at 37). She did that only on weekends for about a year (Tr. at 37). She had brief jobs before that working in fast food and a gas station but could not do those jobs for very long because she has trouble standing (Tr. at 37). All of plaintiff's jobs have been part time; she has never held a full-time job (Tr. at 39).

Plaintiff has to lie down during the day because she has trouble standing or sitting for very long (Tr. at 15-16). Plaintiff can sit for less than a half an hour; she can walk about 50 feet (plaintiff uses a wheelchair when she goes out) (Tr. at 41). She needs help getting dressed and tying her shoes (Tr. at 41). Her husband helps her bathe (Tr. at 41).

Plaintiff has done physical therapy and she uses a TENS unit for her back pain (Tr. at 42). She uses that for 15 minutes every hour (Tr. at 42). She alternates using the TENS unit and ice, and has been doing this for about five years (Tr. at 42-43).

8

The doctor plaintiff sees most often is Dr. Wen (Tr. at 43-44).

At the conclusion of the hearing, plaintiff said, "They did tell me that if we needed anything else we have to go through or sign a release and go through the hospital and get it. They told me y'all usually do that. Usually they don't give it to us, but I just got lucky and they gave me those three today, those three paper things." (Tr. at 46).

## *V.  FINDINGS OF THE ALJ*

Administrative Law Judge Belinda Crutchfield entered her opinion on September 10, 2012 (Tr. at 9-20). Plaintiff's last insured date was June 30, 2012 (Tr. at 14).

Step one. Plaintiff did not engage in substantial gainful activity from her alleged onset date of November 17, 2009, through her last insured date (Tr. at 14).

Step two. Plaintiff suffers from the following severe impairments: possible underlying degenerative joint disease of the knee, a herniated disc at L4-L5, and obesity (Tr. at 14). Plaintiff's anxiety and depression are not medically determinable impairments (Tr. at 14-15).

Step three. Plaintiff's impairments do not meet or equal a listed impairment (Tr. at 15).

Step four. Through her last insured date, plaintiff had the ability to perform sedentary work except she could only occasionally lift and carry 10 pounds; never climb ladders, ropes or scaffolds; only occasionally climb stairs and ramps; only occasionally crouch, kneel, bend or stoop; must have the option to sit or stand at will; must avoid unprotected heights, dangerous machinery, and other hazards; is able to understand, remember and carry out simple instructions; and is able to remain attentive and

9

responsive in a work setting and perform work assignments (Tr. at 15). The ALJ found plaintiff's subjective complaints not credible because her "allegations are not supported by the objective medical evidence." (Tr. at 16). The ALJ found that there was no medical opinion that would indicate a degree of limitation described by plaintiff (Tr. at 16). She noted plaintiff's two automobile accidents and two slip and fall incidents, her obesity (270 pounds at 5' 3" tall), and the fact that she had been unable to try all of her doctor's recommendations because she could not afford it (Tr. at 16-18). The ALJ gave little weight to the opinion of plaintiff's treating physician, Dennis Wen, M.D.:

> Dr. Wen's opinion consists entirely of a single statement that the claimant is "unable to work due to chronic anxiety and chronic back pain." As a threshold matter, Dr. Wen's opinion is conclusory in nature and addresses the ultimate issue of disability, and, as such, is a matter reserved to the Commissioner. Furthermore, Dr. Wen's opinion does not identify what the claimant can or cannot do on a function by function basis. It is not supported by a narrative explanation or reference to objective evidence.

(Tr. at 18).

The ALJ found that plaintiff is unable to perform her past relevant work (Tr. at 18).

Step five. Prior to her last insured date, plaintiff was capable of working as a circuit board assembler, general assembler, or hand bander, all available in significant numbers (Tr. at 19).

## VI.    OPINION OF APPEALS COUNCIL

On January 3, 2014, the Appeals Council denied plaintiff's request for review.

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

>We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
>We also looked at the medical records from University of Missouri Health System dated January 17, 2013, to January 29, 2013, and the medical source statement from Dennis Wen M.D. dated February 28, 2013. The Administrative Law Judge decided your case through June 30, 2012, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(Tr. at 1-2).

Dr. Wen's Medical Source Statement - Physical which was presented to the Appeals Council included the following opinion: Plaintiff could lift 5 pounds frequently and 10 pounds occasionally; stand or walk for a total of 2 hours per day and 10 minutes at a time; could sit for a total of 2 hours per day and for 30 minutes at a time; could occasionally climb, balance, stoop, kneel, crouch, or bend; had an unlimited ability to reach, handle, finger, feel, see, hear, and speak; and had no environmental restrictions (Tr. at 412-413). Plaintiff needed intermittent rest -- she should recline and/or lie down for up to 30 minutes 1 to 3 times per day. Propping up her legs while sitting was not recommended.

The medical evidence from Dr. Wen's office which had been submitted to the ALJ showed that plaintiff saw him from September 28, 2011, through February 29, 2012 (Tr. at 379-389). Those records reflect complaints of chronic and severe back, hip and leg pain; reports of needing a wheelchair to get around due to the pain; the doctor indicating he did not want to give her stronger narcotic pain medication (she had been taking Vicodin) because plaintiff was having problems with severe constipation; Dr.

Wen recommending continued use of the TENS unit as well as physical therapy and epidural steroid injections; and prescriptions for Vicodin, Flexeril (muscle relaxer), Ibuprofen (non-steroidal anti-inflammatory), Xanax (anti-anxiety) and Fluoxetine (antidepressant). Dr. Wen wrote on a prescription pad, "Unable to work due to chronic anxiety and chronic back pain." Plaintiff wrote on that page, "This is a thing from my doc Dr. Wen stating I can not work he said send papers to him and he would give more details to why I can not work." (Tr. at 365).

## *VII. ANALYSIS*

The ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to present her case.

> Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 404.1512(e).

The ALJ's duty to develop the record fully may include re-contacting a treating physician for clarification of an opinion when a crucial issue is undeveloped. Reed v. Colvin, 779 F.3d 725, 726 (8th Cir. 2015) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)). See also Morton v. Colvin, 597 Fed.Appx. 396, 397 (8th Cir. 2015) (ALJ has duty to develop the record); Godoua v. Colvin, 564 Fed.Appx. 876, 878 (8th Cir. 2014) (citing Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003) (it is the ALJ's duty to develop the record fully and fairly during claimant's proceedings, which are non-

12

adversarial) and Snead v. Barnhart, 360 F.3d 834, 838-839 (8th Cir. 2004) (ALJ should have taken steps to develop the record sufficiently to determine if treating physician's opinion deserved controlling weight)).

Here the ALJ discredited the opinion of Dr. Wen because it "does not identify what the claimant can or cannot do on a function by function basis. It is not supported by a narrative explanation or reference to objective evidence." Plaintiff, who was not represented, indicated that Dr. Wen had requested a form and that "he would give more details to why I can not work." The ALJ failed to contact Dr. Wen to get the function-by-function information that he was willing to give, and then discredited his opinion and plaintiff's subjective allegations because that information was not provided. By the time plaintiff obtained counsel and proceeded to the Appeals Council, the function-by-function opinion of Dr. Wen had been obtained but was summarily dismissed because it was dated after plaintiff's last insured date. Again, had the ALJ contacted Dr. Wen as requested, the function-by-function opinion would have been available and his statement regarding the time period covered by those limitations could have been obtained as well.

Because the ALJ should have developed the record by contacting plaintiff's treating physician to obtain his function-by-function opinion as to plaintiff's condition and his opinion whether those limitations were in place before her last insured date (which was 2 months and 5 days before the administrative hearing), this case must be remanded for further consideration.

13

Case 2:14-cv-04039-REL   Document 29   Filed 07/09/15   Page 13 of 14

## VIII. CONCLUSIONS

Based on all of the above, I find that the ALJ erred in discrediting the opinion of plaintiff's treating physician and plaintiff's subjective allegations before requesting the function-by-function opinion Dr. Wen had agreed to provide. Therefore, it is

ORDERED that the decision of the Commissioner is reversed and this case is remanded for further consideration.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
July 9, 2015